24 C.C.P.A.(Patents)

## In re BECKET et al. *

### Patent Appeal No. 3770.

Court of Customs and Patent Appeals.
March 22, 1937.

Charles C. Scheffler and Eugene L. Greenewald, both of New York City (Donald C. Harrison, of New York City, of counsel), for appellants.

---

*Appellant's petition for rehearing denied May 3, 1937.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellants filed their application in the United States Patent Office for a patent on improvements in alloy steels. The particular alloy which was described in the specification was one composed of iron, carbon, chromium, and titanium. The desired result was to produce an alloy which was corrosion-resistive, hard, and ductile, thus constituting an alloy which would be useful in the electric art. The claims attached to the application which have been brought to this court on appeal are numbered 11, 12, 15, 16, 17, 21, 23, 24, 25, 26, and 27. They naturally divide themselves into several groups, of which claims 11, 15, and 21 are typical, and which are as follows:

"11. Alloy which is substantially non-hardenable by heat-treatment and which contains iron, chromium, titanium, and carbon, and wherein substantially all of the chromium exists as a solid solution of chromium in ferrite and substantially all of the carbon exists as titanium carbide, the chromium content being between about 2% and about 16%, the carbon content being not more than about 0.2%, and the titanium content being at least about four times the carbon content and not more than about four times the carbon content plus 1.5% of the total alloy, the balance being iron and incidental impurities; said alloy having a Brinell hardness number less than about 225 when in the as-rolled condition and less than about 150 when heated for a few minutes at about 850° C. to 950° C. and then rapidly cooled.

"15. Method of improving the ductility and workability, and of materially decreasing the hardness under all conditions of mechanical work and heat treatment, of chromium alloy steels containing about 4% to about 8% chromium, carbon in amounts not exceeding about 0.5%, and the balance substantially iron, which comprises combining substantially all of the carbon with titanium as a carbide, which carbide is substantially insoluble in the steel at all temperatures up to and including approximately 1000° C., by incorporating therein titanium sufficient to provide a ratio of titanium to carbon of about 4 to 1, but insufficient to exceed the said ratio by more than about 1% of the total alloy.

"21. A hot-rolled alloy article having when in the as-rolled condition a Brinell hardness number less than about 225, and less than about 150 when heated for a few minutes at about 850° C. to 950° C. and then cooled, and having substantially the composition: 2% to 16% chromium, carbon in amounts up to about 0.2%, titanium at least four times the carbon but not more than four times the carbon plus 1.5%, the balance substantially iron."

In forming the alloy, the appellants use chromium from 2 per centum to 30 per centum, less than 0.5 per centum of carbon, and titanium from at least four times the carbon content to four times the carbon content plus 1 per centum. The ratio of titanium to carbon is based upon the ratio of atomic weights, viz., 48.1 : 12.0, and upon the assumption that they combine to form the compound TiC. It is insisted by the appellants that the addition of titanium renders a steel having up to 16 per centum chromium substantially non-hardenable and increases its ductility, malleability, and workability. The appellants also insist that what they have discovered is that "by the addition of certain critical amounts of titanium, in definite ratio to the amount of carbon present, a chromium steel which otherwise would behave like a hardenable tool-steel is converted to a soft, mild, non-hardenable material resembling ordinary soft iron."

The Examiner cited four references, as follows: Fahrenwald, 1,464,312, August 7, 1923; Krupp Co. (Swiss), 142,798, December 16, 1930; Krupp Co. (Br.), 361,-397, November 23, 1931; Colville (Br.) 350,048, June 11, 1931.

The Examiner rejected the claims on the strength of these references, being of opinion that the so-called inventive steps of the appellants were fully disclosed by the prior art. On appeal to the Board of Appeals, the same conclusion was arrived at, and appellants appeal.

A brief review of the references is necessary.

The reference Fahrenwald discloses a patent for an alloy of a ferrous metal, alloyed with not more than "about twenty-five per cent. of chromium" and also with one or more metals from the titanium

group of the periodic table of elements arranged according to Mendeleef, the member of the titanium group being present in an amount at least "about one per cent." and generally not more than five per cent. of the whole. Carbon is reduced to the lowest possible limits, because of its hardening quality. The inventor prefers to use titanium itself, and explains that it produces homogeneous ductile solid solution alloys with the other substances. The patent contains the following statement: "By keeping the chromium content to the low limit mentioned the intrinsic value of the alloy is reduced, its ductility is increased, and its manufacture facilitated owing to the greater ease of keeping the carbon within bounds. The addition of a comparatively small quantity of titanium or zirconium has the same effect in shielding from oxidation as a much greater quantity of chromium and without increasing the hardness or producing unstable surface conditions such as would be the case if other protective substances were employed."

The Swiss patent, No. 142,798, discloses a chromiferous steel alloy, in which the carbon is reduced to a very low value, and to which titanium or vanadium is added. The patent fully discloses the advantages to be derived from this combination of metals, mentioning, among others, resistance to corrosion and the prevention of acquisition of brittleness in the alloy. As examples of the composition of its alloy, the Swiss patent gives the proportion of less than 1 per centum carbon, about 18 to 25 per centum chromium, 7 to 12 per centum nickel, up to 6 per centum of one of the alloy components mentioned, and, in another example, 0.07 to 2 per centum carbon, about 18 per centum chromium, about 8 per centum nickel, and about 0.1 to 1 per centum titanium.

The foreign patent to Colville & Sons discloses a steel which is claimed to possess superior powers of resisting scaling and oxidation by furnace gases and scaling and attack by high-pressure steam, while being particularly suitable for the manufacture and working of superheater and boiler tubes, and the like. This steel contains chromium, silicon, carbon, and manganese, with small quantities of titanium, or a member of its group. It is claimed to resist the effects of local overheating without injury. The patent also discloses that the composition, as stated, does not harden, and remains ductile. A sample composition is given as chromium 4.0 to 10 per centum, silicon .2 to .7 per centum, carbon .05 to .20 per centum, and manganese .2 to .45 per centum.

The foreign patent No. 361,397 discloses a similar steel alloy. This alloy contains not more than 0.19 per centum of carbon, chromium in an amount of not more than 7.5 per centum, molybdenum or vanadium amounting to at least twice the carbon content of the steel. It is also stated that up to 2 per centum of titanium may be added and thus allow a substantial proportion of molybdenum or vanadium to dissolve in the ferrite. It is also expressly stated that the amount of molybdenum, vanadium, and titanium must always be at least twice the carbon content. The patent thoroughly explains the properties of the alloy, stating, among other things, that it has a high creep limit. A sample claim of the patent thus describes the constituents of the alloy: Up to 0.6 per centum of carbon, not more than 7.5 per centum of chromium, up to 2 per centum of molybdenum or vanadium, or mixtures thereof, and up to 2 per centum of titanium.

Claims 11 and 12, 24, and 26 may be grouped into one group. They give the range of the constituents of the alloy. It is insisted by the appellants that the particular range which is given produces an unexpected result, and is not anticipated or disclosed by the prior art. However, as it seems to the court, the various ranges which are given are well within the disclosures of the prior art, and so there is no new contribution to the art by the disclosures of the appellants' application.

The effects which the various elements contain within the alloy produced have all been known for years to the art, and the worker in the art having the reference patents before him would have no difficulty in producing the effect which he desired to produce in an alloy as to hardness, ductility, and corrosion resistance. Where the component elements of alloys are the same, and where they approach so closely the same range of quantities as is here the case, it seems that there ought to be some noticeable difference in the qualities of the respective alloys. None has been pointed out in this case, except those qualities which have been well known to the art.

The case is much like those cited by the Board of Appeals: In re Marcus T.

Lothrop, 58 F.(2d) 429, 19 C.C.P.A.(Patents) 1183; In re Norman B. Pilling, 44 F.(2d) 878, 18 C.C.P.A.(Patents) 703; Wemple and Daesen v. Peirce and Anderson, 75 F.(2d) 998, 22 C.C.P.A.(Patents) 1064.

Claims 15, 16, 17, and 23 are method claims. The Board of Appeals was of opinion that no method was stated which was patentable. We agree with this conclusion. No particular method of putting the metals together is stated, and it certainly must be admitted that the simple art of placing metals in a crucible is as old as the knowledge of men on the subject of producing metals. If there be any invention in appellants' disclosure, it would lie in the material produced and not in the stated method of producing it.

The decision of the Board of Appeals of the United States Patent Office is affirmed.

Affirmed.

HATFIELD, Associate Judge, took no part in the decision of this case.