**Application of Alvin E. NEHRENBERG.**
**Patent Appeal No. 6568.**

United States Court of Customs and Patent Appeals.
July 6, 1960.

Morris Fidelman, Washington, D. C. (John R. Pegan, Huntington, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and WILLIAM H. KIRKPATRICK, Judge.[1]

SMITH, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the primary examiner of claims 1, 2 and 3 of appellant's application No. 416,295 for a patent on a ferritic stainless steel. Claim 1, which is representative of the appealed claims, is as follows:

"A stainless and heat resistant steel of substantially homogeneous and ferritic structure consisting essentially of: 19 to 30% chromium, 0.2 to 1% each of silicon and manganese, 0.1 to 1% aluminum, up to 1% each of molybdenum and copper, 0.05 to 0.1% carbon, up to 0.5% nickel, up to 0.2% nitrogen, and the balance iron, in which the elements aforesaid are so proportioned that the combined content of chromium, silicon and molybdenum plus ten times the aluminum content minus the nickel content and thirty times the combined content of carbon and nitrogen, is at least 21%."

The references relied on are:

"Bloom 2,590,074 March 25, 1952
Binder, et al. 2,602,737 July 8, 1952
Binder 2,624,668 Jan. 6, 1953
Metal Progress, July 1947, Page 94"

Appellant's application states: "This invention pertains to ferritic stainless steels, and provides a *wholly ferritic* stainless steel of *homogeneous structure,* * * *." (Emphasis added.) As stated in appellant's brief, ferrite is a solid solution in which alpha iron is the solvent and which is characterized by a body-centered cubic crystal structure. Since neither the application nor appellant's brief defines the term "homogeneous," we assume it is used in the technical sense that the steel has a uniform crystal lattice throughout.

Ferritic steels have a number of desirable properties. They are magnetic, resist corrosion, and are not hardened by heat treatment. The application states that a completely ferritic steel may be produced by properly proportioning the chromium, silicon, molybdenum and aluminum content with respect to the content of carbon, nitrogen and nickel, and sets forth a formula for apportioning these ingredients, as well as a "broad range" and a "preferred range" of suitable proportions. Each of the appealed claims states that the proportions satisfy the formula, but they vary somewhat as to the specific amounts of some of the ingredients.

The Binder patent No. 2,624,668, which is the basic reference, relates to ferritic chromium steels which are disclosed as having a "substantially ferritic structure." It discloses steels having the same elements as those of appellant's application and in generally similar proportions.

The Binder, et al. patent No. 2,602,737 was cited to show that the art recognizes

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28 United States Code.

that a balance may be maintained between the ferritic and austenitic structures in steel by a proper proportioning of ingredients.

The Bloom patent discloses an austenitic steel which becomes ferritic as the result of cold working while Metal Progress shows that the addition of aluminum to steel increases the ferritic content.

The secondary references are of interest in showing a recognition by the art of the effect of various alloying ingredients on the structure and property of steels, but we do not regard them as vital to the rejection here under consideration, which is based essentially on the Binder patent No. 2,624,668.

The relationship between what is called for by the appealed claims and what is disclosed by the Binder reference patent is tabulated in the board's decision as follows:

| | "Claim 1 | Claim 2 | Claim 3 | Binder (A) 2,624,668 |
|---|---|---|---|---|
| | % | % | % | % |
| C | .05 to 0.1 | .05 to .07 | .05 to 0.1 | up to 0.035 |
| Ni | up to 0.5 | up to 0.2 | up to 0.5 | 0.5 to 3.5 |
| Al | 0.1 to 1 | 0.2 to 0.5 | 0.1 to 1 | 0.25 to 1.5 |
| Cr | 19–30 | 21–28 | 19–30 | 20–30 |
| Mn | 0.2 to 1 | 0.2 to 0.5 | 0.2 to 1 | 0.25 to 3 |
| Si | 0.2 to 1 | 0.2 to 0.5 | 0.2 to 1 | up to 1 |
| Mo | up to 1 | up to 0.5 | up to 1 | up to 3 |
| N | up to 0.2 | up to 0.1 | 0.1 to 0.2 | up to 0.08 |
| Cu | up to 1 | up to 0.5 | up to 1 | up to 3 |
| Fe | Balance | Balance | Balance | Balance" |

It will be seen that there is, in most instances, a very substantial overlapping between the claimed ranges and those of Binder. Thus, in the case of claim 1, Binder discloses proportions of every ingredient except carbon which fall within the claimed range. Binder's lower limit for nickel is the same as the claimed upper limit, but in the case of all other ingredients Binder's range includes all or at least three-fourths of the claimed range.

The board points out one example of a steel falling within the ranges given by Binder and satisfying the requirements of the formula which forms a part of each of the appealed claims. Appellant contends that this example was computed with knowledge of his disclosure and should not be regarded as anticipatory. However, the selected example appears to have been chosen as a typical example. It is apparent that many of Binder's steels, especially those at the upper end of his chromium range, will meet the requirements of appellant's formula as claimed. Accordingly, even when appellant's formula is taken into consideration, many of the compounds disclosed by Binder fall within the terms of claim 1 except for the amount of carbon included. Aside from the carbon content, therefore, claim 1 is anticipated by Binder. See In re Lincoln et al., 119 F.2d 433, 28 CCPA 1137; In re Cooper et al., 134 F.2d 630, 30 CCPA 946.

As above-noted, Binder considers it desirable that the carbon content of his steels should not exceed 0.035 per cent. This is because he is interested in making steels of high toughness. His specification states that "With a higher carbon content than 0.035%, that is, in the range of carbon content that can be produced practically in the arc furnace without the use of oxygen for refinement, the toughness of the steel is lowered even though the toughening elements aluminum, nickel and copper are present." As

pointed out in appellant's application and brief, high chromium steels produced without special procedures for eliminating carbon normally have a carbon content of at least 0.05 per cent, and it is therefore evident this is the amount of carbon which Binder refers to as "a higher carbon content." Binder thus has considered the use of the amount of carbon set forth in appellant's claims, but regards it as undesirable for his particular purpose of making a steel of high toughness. In our opinion, however, Binder's disclosure would suggest to those skilled in the art that a carbon content of 0.05 per cent or more might be used in the steels which he discloses if extreme toughness were not desired and it was desired to avoid the additional expense of using oxygen for refinement. A disclosure of a composition of matter in a reference may be anticipatory even though the reference indicates that such composition is not preferred or even that it is unsatisfactory for the intended purpose. In re Smith, 148 F.2d 351, 32 CCPA 959.

■ Since Binder's disclosure fairly suggests to those skilled in the art a number of steels falling within the scope of claim 1, the rejection of that claim was proper.

Claim 2 further distinguishes over Binder in that it is limited to a nickel content of not more than 0.2 per cent while Binder's lower limit of nickel is 0.5 per cent. Similarly, claim 3 recites a nitrogen content of 0.1 to 0.2 per cent while Binder's upper limit for nitrogen is 0.08 per cent. We find nothing in the record which would support a holding that these relatively slight differences are of any patentable significance. While appellant's specification indicates that the nickel content of claim 2 is "preferred" there is nothing to show that it is in any way critical or that it involves anything more than judicious selection. With respect to the nitrogen content, the specification states that the preferred amount is 0.1 per cent maximum, while a broad range of up to 0.2 is permissible. Claim 3, therefore, is not limited to the preferred amount but is drawn to that half of the broad range which is above the amount preferred. We agree with the Board of Appeals that claims 2 and 3, as well as claim 1, fail to define patentable novelty over the art of record.

■ In the summary to his brief, appellant points out that "the art of alloy steels is a crowded and competitive art." When dealing with claims to inventions in such an art, it is essential that those seeking patents in such a field must comply strictly with the requirement of 35 U.S.C. § 112 to the end that the claims must particularly point out and distinctly claim "the subject matter which applicant regards as his invention." The requirements for a proper claim in such an art were summarized by the Supreme Court in General Electric Co. v. Wabash Appliance Corp. et al., 1938, 304 U.S. 364, 369, 58 S.Ct. 899, 902, 82 L.Ed. 1402; as follows:

"* * * The claims 'measure the invention.' Patentees may reasonably anticipate that claimed inventions, improvements, and discoveries, turning on points so refined as the granular structure of products, require precise descriptions of the new characteristic for which protection is sought. In a limited field the variant must be clearly defined. * * * *"

The "variant" in this "crowded and competitive art" which appellant has asserted in his specification is a "wholly ferritic stainless steel of homogeneous structure." The discussions in appellant's brief which relate to the distinctions between his invention and the prior art again emphasize that the novel "variant" is a "wholly ferritic" stainless steel. Our analysis of the prior Binder patent No. 2,624,668 convinces us that while it does not disclose such a product, it does disclose a product which is a "substantially ferritic" stainless steel. The qualifying term "substantially" in the claims on appeal modifies the term "ferritic" in such a manner that the claims do not distinguish appellant's steel from the steel disclosed in the Binder reference.

No new and unobvious result has been disclosed by appellant in his specification as residing in a "substantially ferritic stainless steel." Whatever there may be in the way of a new and unobvious result to support appellant's position is necessarily related to his disclosed "wholly ferritic stainless steel of homogeneous structure." If appellant's invention actually resides in a "substantially ferritic" stainless steel as claimed in the claims on appeal, no such invention is disclosed in his specification.

Being limited as we are to the wording of the claims before us, we agree with the board that a "substantially homogeneous and ferritic" structure of the steel is, at best, but a change in degree from the "substantially ferritic" steel of the Binder patent. We are not aided by the specification herein in determining what degrees are included within the broad term "substantially." Taken in its accepted dictionary sense it embraces both Binder's range and that of the "Metal Progress" publication.

The decision of the Board of Appeals is affirmed.

Affirmed.